DECISION
This matter comes before the Court on the State's Motion for Reconsideration and Clarification of this Court's written decision filed in the within matter on April 26, 1999. Specifically, the State requests reconsideration in light of our Supreme Court's evidentiary analysis in DiPetrillo v. Dow Chemical Co., 729 A.2d 677 (R.I. 1999) and further, requests clarification of this Court's decision as it pertains to Gina's[1] testimony and the testimony of experts.
 Travel/Facts
The detailed recital of the background facts leading to defendant's conviction at his 1994 trial is contained in the opinion rendered by our Supreme Court in State v. Quattrocchi, 681 A.2d 879 (R.I. 1996), and in this Court's April 26, 1999 decision, and need not be recapitulated here but shall be incorporated herein by reference. After our Supreme Court vacated defendant's judgment of conviction on July 31, 1996, this Court exercised its gatekeeping function on remand to determine the reliability of repressed recollection testimony and whether expert testimony was necessary for further elucidation. See Quattrocchi, supra at 884.
This Court conducted a hearing during which a combination of lay witnesses and experts testified upon the subject of repressed recollection. In addition to the testimony proffered during the hearing, prior trial testimony of the complainant was also considered in formulating the April 1999 decision. Ultimately, this Court determined that the State had failed to meet its burden in proving the reliability of repressed recollection and its admissibility as scientific evidence.
On October 22, 1999, oral arguments were heard on the State's Motion for Reconsideration and Clarification. The State asserts that the Court's previously issued decision should be reconsidered in light of DiPetrillo v. Dow Chemical Co., supra, which was fortuitously issued on April 26, 1999 — the same date that this Court filed its decision.
Rather than reiterating the evidence proffered during the Rule 104 (a) hearing which was ultimately integrated into the thirty-one page decision on the within matter, this Court will encapsulate the pertinent portions of its decision as it relates to the State's questions for reconsideration. It should however be established at the outset that the earlier decision was predicated on the posture of the law relating to scientific evidence admissibility as defined by our Supreme Court. It should be further noted that this Court does not perceive DiPetrillo as reversing or overturning any portion of this area of the law but rather, as more palpably and comprehensively summarizing acceptable guidelines for the trial justice as gatekeeper of evidence. Consequently, this Court deems that it need not reconsider its prior decision in light of DiPetrillo, but shall, however, clarify pertinent portions to demonstrate its alignment with DiPetrillo.
 State of the Law in Rhode Island
After the landmark decision Daubert, infra, by the United States Supreme Court, holding that Frye, infra, was inflexible and not compatible with Rule 702 or with the Federal Rules of Evidence and prior to the publication of DiPetrillo, our Supreme Court had not definitively promulgated what, if any, changes it should endorse in instructing trial justices on the admittance of scientific evidence. In fact, in Quattrocchi, supra at 884 n. 2, the Court stated: "We shall leave to a later day the emphasis to be placed on general acceptance as set forth in both Frye and Daubert as opposed to the three other factors set forth in Daubert."
 Neither Strict Frye nor Express Daubert
The State has mistakenly argued that the standard for the admissibility of scientific evidence has changed in light of DiPetrillo. Briefly, DiPetrillo involved a product liability claim against a herbicide manufacturer brought by a worker who applied these herbicides and later contracted cancer. The defendants in DiPetrillo challenged expert testimony which would purportedly show plaintiff's cancer was casually related to his exposure to the herbicide manufactured by defendant. See Id. at 683. In paving a clearer path to guide trial justices in their gatekeeping duties, the Court stated that they "must control the gateway for expert scientific testimony by conducting, pursuant to Rule 104 an early preliminary assessment of the evidence . . . [t]his entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." Id. 686-87 (citing Daubert I, 509 U.S. at 592-93, 113 S.Ct. at 2796, 125 L.Ed.2d at 482).
DiPetrillo reiterates the discretionary role of the trial judge at these hearings and the "importance of [this] pretrial procedure by which the trial judge gathers the necessary information and evaluates both the reliability of the underlying principles and methodology employed by the proposed expert witness and the potential relevance of the proposed evidence." Id. at 688.
Upon the execution of this hearing by the trial judge, the next step in the admissibility analysis remained the standard to be engaged in assessing reliability. The Court "offer[ed] guidance on the standard for admissibility that should govern preliminary hearings and hearings out of the presence of the jury." Id. at 686. In articulating this standard the Court stated: "Prior decisions of this Court have adverted to the Frye `general acceptance' standard (citations omitted), even though this Court has not strictly adhered to that standard." Id. However, DiPetrillo does not fully embrace the Daubert standard: "Though we declined expressly to adopt the Daubert I standard, our previous cases have endorsed its principles . . . if such evidence was relevant, appropriate and of assistance to the jury." Id. Our Court sanctions "a more flexible relevance/helpfulness analysis." Id. "The test is whether or not the reasoning is scientific and will assist the jury." Id. at 690.
 Alignment with DiPetrillo
The State maintains that DiPetrillo set a new evidentiary standard which warrants reassessment of the evidence by this Court. This is simply incorrect. Our Supreme Court has consistently followed a flexible relevance/helpful approach to evidence admissibility. See, e.g., DiPetrillo, supra at 686; State v. Morel, 676 A.2d 1347, 1355 (R.I. 1996); In re Odell, 672 A.2d 457, 459 (R.I. 1996); State v. Wheeler,496 A.2d 1382, 1388 (R.I. 1985). DiPetrillo explicitly states that the pre-trial assessment of the evidence is largely within the trial court's discretion.[2] Id. DiPetrillo identifies the four Daubert factors as material guides in adducing reliability.[3] This Court applied this precise analysis in reaching its decision. The four Daubert factors were identified and were each considered on its merit. See Decision at 9, 18, et seq. While going through the steps of the analysis, this Court emphasized the criterion of general acceptance in the scientific community. DiPetrillo expressly states that: "These [Daubert] factors need not and most likely will not be given equal weight in the analysis." Id. at 689 (emphasis added). This Court's opinion is that its decision was consistent with the analysis recommended by DiPetrillo. Thus, after hearing the arguments and reviewing the memorandum submitted by the parties, this Court maintains its prior analysis that the repressed recollection evidence in this matter is unreliable and therefore inadmissible.
 Request for Clarification
The State requests clarification of this Court's previous decision regarding the admissibility of Gina's testimony. This Court finds State v. Hungerford, infra, particularly illuminating on this issue and shall once again utilize its reasoning in its analysis.[4]
In Hungerford, the Court engaged a novel approach to determine the admissibility of testimony by percipient witnesses or a single witness who experienced repressed recollection of sexual abuse. In excluding such testimony, the Hungerford Court utilized the scientific standards of admissibility because expert testimony would have been required to explain to the jury the machinations of repressed and recovered memories. Thus, the percipient witness here, Gina, may not testify about repressed memories, when this Court as gatekeeper, has deemed such expert testimony unreliable.
The State fails to grasp the concept that "[this] witness [is] not [an] ordinary eyewitness with ordinary memories" and thus the Court must examine the reliability of these memories rather than mere competence as a witness. See Hungerford at 920. Gina's memories have "undergone a physiological process unlike ordinary memory, with which an average juror would be familiar." Id. at 922.
Because of the process that Gina went through in retrieving these memories, she is not the average witness complaining of sexual abuse. Thus she is precluded from testifying about these repressions that fall outside of the purview of the common juror. Contrary to the State's assertion, this inadmissibility does not contradict G.L. § 11-37-11, which allows a witness to testify about sexual abuse without corroboration.[5] Ultimately, if Gina were allowed to testify upon her repressions, jurors would be required to "determine the credibility of [her] memory as well as the soundness of the scientific methodology upon which the memory is based."[6] Because this Court determined that expert testimony relating to repression of recollection is unreliable and therefore inadmissible, it would be wholly inconsistent to allow Gina to testify as to inadmissible matters.[7]
For the foregoing reasons, an order may enter denying the Motion for Reconsideration.
[1] The Court will continue to refer to the complaining witness by this name, as it had in its previous decision.
[2] As further testament that our Supreme Court grants discretionary latitude to trial justices as evidentiary gatekeepers, this Court finds it significant that the Court bypassed its opportunity in Quattrocchi, supra, to comment upon the reliability of repressed recollection but expressly declined:
 "[W]e do not attempt at this time to resolve the controversy concerning the reliability and admissibility of repressed recollections as well as the expert testimony that may corroborate and support the basis for such repression and the reliability of the flashbacks or recovered recollections when they are offered at trial." Id. at 883
[3] The four Daubert factors are: (1) whether the proffered knowledge can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory or technique has gained general acceptance in the relevant scientific field. Id. at 593-94, 113 S.Ct. at 2796-97, 125 L.Ed. at 482-83.
[4] State v. Hungerford, 697 A.2d 916 (N.H. 1997).
[5] Incidentally, almost every state in the country allows testimony by a witness complaining of sexual abuse without corroboration. This is not a unique facet of the law.
[6] Joseph A. Spadaro, An Elusive Search For the Truth: The Admissibility of Repressed and Recovered Memories in Light of Daubert v. Merrell Dow Pharmaceuticals, Inc., 30 Conn. Law Review 1147, 1173 (1998).
[7] The following testimony by both State and defense experts took place during hearing and was integrated in this Court's previous decision:
 "It is possible for memories of abuse too have been forgotten for a long period of time and to be remembered . . .
 "It's also possible to construct convincing pseudo memories for events that never occurred . . .
 "[I]n some cases of recovered memories of childhood sexual abuse, the recollections are essentially true or the recollections are essentially false." State v. Quattrocchi, C.A. 92-3759, April 26, 1999, Clifton, J. at 13-14.